IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHARLES SULTAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No.  12-cv-934-SCW |
| | ) |
| C/O HARMON and DOUGLAS COFFEY, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

**WILLIAMS, Magistrate Judge:**

### I.   Introduction

This case is before the Court on Defendants' Motion for Summary Judgment (Docs. 26 & 27).   Defendants argue in their motion that they are entitled to summary judgment due to Plaintiff's failure to exhaust administrative remedies and because the claim is barred by the statute of limitations. Plaintiff has filed a Response (Doc. 32) in opposition to the motion as well as a dueling motion for summary judgment (Doc. 38).   Based on the following, the Court **GRANTS** the motion for summary judgment (Doc. 26 & 27).

### II.   Findings of Fact

Plaintiff initially filed the Complaint that forms the basis of this case on October 11, 2011, in the case ***Sultan v. Feinerman*, Case No. 11-cv-911-MJR**.   In that case, among various other claims, Plaintiff alleged that Defendants Harmon and Coffey retaliated against him by placing him in segregation for acting as a jail-house attorney.   Plaintiff's retaliation claim was severed into the instant case by District Judge Michael J. Reagan on August 22, 2012.   Plaintiff was placed in segregation as a result of a disciplinary ticket issued on October 25, 2008.

In Response to Plaintiff's Complaint, Defendants Harmon and Coffey have filed a motion for summary judgment in which they argue that Plaintiff has failed to exhaust his administrative remedies and that, in the alternative, the statute of limitations has run. Defendants point to two grievances which were received by the ARB regarding the disciplinary ticket Plaintiff received on October 25, 2008. The first grievance was received by the ARB on April 2, 2009 (Doc. 27 Ex. F). The grievance is dated December 19, 2008 but Plaintiff's signature line is not dated (*Id.*). The ARB received what appears to be a second copy of this same grievance on June 29, 2009 (Doc. 27 Ex. G). This grievance appears to be word for word the same as the first grievance, but has a date on the signature line of December 19, 2008 (*Id.*). This grievance has the handwritten word "copy" at the top of the grievance (*Id.*). Neither grievance has a response from Plaintiff's counselor or grievance officer. Attached to Plaintiff's second copy of the grievance is a letter from Plaintiff to his grievance officer dated March 4, 2009 in which Plaintiff informs his grievance officer that his original grievance was misplaced or destroyed and that he is submitting another copy of the grievance to the grievance officer (Doc. 27 Ex. H). The ARB denied Plaintiff's grievance as to the disciplinary report issue on July 6, 2009 as untimely because it was filed outside of the deadlines for appealing grievances (Doc. 27 Ex. J).[1]

On March 31, 2009, Plaintiff filed another grievance, alleging that his December 19, 2008 grievance was either misplaced or destroyed by his counselor (Doc. 27 Ex. I). This grievance was received by Plaintiff's counselor on April 2, 2009 and on April 3, 2009, the counselor responded to the grievance, indicating that grievances regarding disciplinary issues are to be forwarded directly to the grievance officer and that the grievance officer had not received the grievance Plaintiff spoke of

---

[1] The Court notes that the grievance officer eventually reviewed and issued a ruling on Plaintiff's December 19, 2008 grievance in response to a request from the ARB (Doc. 32 at p. 29). The grievance was reviewed on April 27, 2009. The grievance officer found no violation of Plaintiff's due process rights in the issuance and ruling on Plaintiff's disciplinary ticket. The Chief Administrative Officer concurred in the grievance officer's ruling on April 30, 2009.

(*Id.*).

In Response to Defendants' motion for summary judgment, Plaintiff filed both a Motion for Summary Judgment (Doc. 38) and a Response in opposition to Defendants' summary judgment motion (Doc. 32). While Plaintiff's motion for summary judgment was titled as a dispositive motion, the motion appears to merely be a further response to Defendants' motion for summary judgment and will be construed as such. Plaintiff alleges that he did exhaust his administrative remedies because he gave his grievance to his counselor, Ms. Latoya Owens, on or about December 20, 2008 but that Owens either misplaced or destroyed his grievance. Specifically, Plaintiff points to a face-to-face meeting he had with Owens on March 13, 2009 in which she discussed his pending grievance and informed Plaintiff that she did not have in her possession a grievance based on the disciplinary report. On March 14, 2009, he sent another copy of the December 19, 2008 grievance directly to his grievance counselor, informing the officer that he had originally handed the grievance to counselor Owens, but as of March 13, 2009, Owens stated that she did not know what happened to the grievance (Doc. 32 at p.39). He received a counseling summary that same day which noted that the grievance officer did not have the grievance (*Id.* at pp.39, 40). Plaintiff indicates that he also sent a letter to the ARB on March 14, 2009, indicating that his grievance had not been received by Menard Correctional Center because it had been lost by Owens (Doc. 32 at p.38). He argues that he did all he could to properly exhaust his grievance.

### III. Conclusions of Law

Summary Judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, **604 F.3d 464, 467 (7th Cir. 2010).**

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation

Reform Act ("PLRA"). **42 U.S.C. §1997e(a).** That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* **(emphasis added).** The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion").** Exhaustion must occur before the suit is filed. *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004).** Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2005).** Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, **438 F.3d at 809.**

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, **544 F.3d 739, 740-41(7th Cir. 2008).** Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the

> failure to exhaust was the prisoner's fault, in which event the case is over.  (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* **at 742.** Although the court in *Pavey* included a hearing as one of the steps in determining whether the plaintiff had satisfied the exhaustion requirement, "there is no reason to conduct an evidentiary hearing" in a "situation [where] there are no disputed facts regarding exhaustion, only a legal question." *Doss v. Gilkey*, **649 F.Supp.2d 905, 912 (S.D.Ill. 2009) (Gilbert, Phil J.).**

A.    **Exhaustion Requirements Under Illinois Law**

As an inmate confined within the Illinois Department of Corrections, Sultan was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims.  **20 Ill. Administrative Code §504.800 et seq.** The grievance procedures first require inmates to speak with the counselor about their complaint.  **20 Ill. Admin. Code §504.810(a).** Then, if the counselor does not resolve the issue, the inmate must file a grievance form directed to the Grievance Officer within 60 days of the incident.  *Id*.  The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint.  The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code §504.810(a)(b).** "The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer…[who] shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code**

**§504.830(d).** If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board ("ARB"). The grievance procedures specifically state, "[i]f after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision. Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached." **20 Ill. Admin. Code §504.850(a).** "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." **20 Ill. Admin. Code §504.850(e).** "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." **20 Ill. Admin. Code §504.850(f).**

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer ("CAO") who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. **20 Ill. Admin. Code §504.840(a).** If an inmate forwards the grievance to the CAO as an emergency grievance, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him which course he has decided is necessary after reading the grievance. **20 Ill. Admin. Code §504.840(b).** Once the CAO has informed the inmate of his decision, the inmate may then appeal that decision to the ARB on an expedited basis. **20 Ill. Admin. Code §504.850(g).**

**B.     Analysis**

Defendants argue that Plaintiff's claim should be dismissed for failure to exhaust his administrative remedies because Plaintiff did not follow the proper procedure and his grievance was denied by the ARB as untimely.  Plaintiff argues that he did all he could to exhaust his administrative remedies and that his first grievance regarding his disciplinary report was lost by Counselor Owens.

From the facts before the Court, it is clear that a grievance dated December 19, 2008 was received by the ARB on April 2, 2009 (Doc. 27 Ex. F).  Another copy of this same grievance, identical to the first copy except that Plaintiff dated the signature line to also reflect a December 19, 2008 date was received by the ARB on June 29, 2009 (Doc. 27 Ex. G).  The ARB apparently returned the first copy of the grievance to the grievance officer for a ruling.  The grievance was received by the grievance officer at Menard Correctional Center on April 27, 2009 and was reviewed by the grievance officer, at the request of the ARB, on that same date (Doc. 32 at p. 29).  The grievance was denied at that time.  The Chief Administrative Officer then concurred in the opinion of the grievance officer (*Id.*).  The ARB denied the June 29, 2009 grievance as untimely on July 6, 2009 (Doc. 27 Ex. J).

Plaintiff maintains that he properly exhausted his grievance because he first submitted the grievance to his counselor in December 2008 and the grievance was lost.  While Defendants note that grievances regarding disciplinary reports are to be submitted directly to the grievance officer, Plaintiff maintains that he never asked Counselor Owens to review his grievance and knew that the grievance had to be reviewed by the grievance officer, but rather gave the grievance to Owens so that she could put it in the grievance officer's box for Plaintiff.  There is some evidence in the record to suggest that Plaintiff submitted his grievance on December 20, 2008.  While Plaintiff attests that the counseling summary indicates that he gave the grievance to Owens and that she told him she would put it in the grievance officer's box, there are no entries in the counseling report for December 20,

2008 and none of the December 2008 entries reflect that Owens received a grievance from Plaintiff (Doc. 32 at pp. 42-43). The only entry in 2008 dealing with Plaintiff's grievance is dated November 19, 2008 (*Id.* at p. 43). That entry indicates that Owens had face to face meeting with Plaintiff where he complained about his segregation placement and requested a grievance form (*Id.*). The entry indicates that Owens sent him the requested grievance forms, but does not indicate that the forms were then returned to Owens (*Id.*).

However, other evidence in the record suggests that Plaintiff did turn in his grievance to Owens sometime in late 2008 or early 2009. On March 13, 2009, Owens had another face to face with Plaintiff in which Plaintiff asked Owens about his pending grievance (Doc. 32 at p. 43). After the meeting Owens wrote Plaintiff a letter indicating that the grievance office did not have a grievance based on his disciplinary report (Doc. 32 at p.40). In response to Owens' letter, Plaintiff wrote a grievance dated March 31, 2009, in which he alleged that he submitted the December 19, 2008 grievance to Owens on December 19 and that she said she would sign the grievance and submit it to the grievance office but that instead Owens misplaced or threw out the grievance (Doc. 32 at p. 18). On March 14, 2009, Plaintiff also wrote a letter to the ARB and the grievance officer indicating that he gave the December 19, 2008 grievance to Owens but that it never reached the grievance office (Doc. 32 at pp. 38-39). The letter to the ARB was submitted with the first copy of his grievance received by the ARB on April 2, 2009 (Doc. 27 Ex. H). Plaintiff's argument that he tried to submit his grievance in December 2008 but was thwarted by Owens either misplacing or destroying the grievance is supported by the later grievances and letters from Plaintiff. Plaintiff did not file these letters and other grievances until after he learned that his grievance was not received by the grievance officer. At that time, he submitted the grievance directly to the ARB and wrote letters to both the ARB and grievance office about his missing grievance, as well as submitted a grievance regarding Owens losing


the December grievance. This suggests that Plaintiff indeed filed a grievance in December 2008 that was then destroyed or lost. Such an action of thwarting Plaintiff's grievance process on the part of Owens could result in Plaintiff's claims being deemed properly exhausted. **See *Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2000) (an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities but never receives a response); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (a remedy can be unavailable to a prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting his resources); *Brown v. Darnold*, 2010 WL 3702373, at \*3 (S.D. Ill. 2010) ("The Seventh Circuit has held that administrative remedies become 'unavailable' when prison officials fail to respond to inmate grievances." (quoting *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002)).**

Normally, such a dispute over the facts of exhaustion would warrant a hearing pursuant to *Pavey*. The Court would then decide based on the facts deduced at the hearing, whether Plaintiff was thwarted in his attempts to exhaust. However, the Court finds that a hearing in this case is not needed, as Plaintiff's Complaint fails on another ground, namely that it is barred by the applicable statute of limitations.

The Supreme Court has held that actions under § 1983 should be characterized as personal injury claims, and, therefore, are governed by the personal injury statute of limitations in the state where the alleged injury occurred. *Owens v. Okure*, **488 U.S. 235, 249–250 (1989)**; *Wilson v. Garcia*, **471 U.S. 261, 279 (1985).** In Illinois, therefore, § 1983 claims are subject to the state's two-year statute of limitations applicable to personal injury actions. **735 Ill. Comp. Stat. § 5/13-202;** *Gonzalez v. Entress*, **133 F.3d 551, 554 (7th Cir. 1998).** Federal law determines the accrual of a claim. *Wilson v. Giesen*, **956 F.2d 738, 740 (7th Cir. 1992);** *Wallace v. Kato*, **549 U.S. 384, 388,**

**127 S.Ct. 1091, 166 L.Ed.2d 973 (2007).** Generally, claims accrue when the plaintiff knows or has reason to know of the injury giving rise to the cause of action. ***Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1992); *Wallace v. City of Chicago*, 440 F.3d 421, 427 (7th Cir. 2006); *Wilson*, 549 U.S. at 388, 127 S.Ct. 1091, 166 L.Ed.2d 973 ("[I]t is the standard rule that [accrual occurs] when the plaintiff has a complete and present cause of action." (citations omitted)).** A § 1983 claim, as a civil rights claim, therefore, accrues when the plaintiff knows or should know that his constitutional rights have been violated. ***Id.*; *Evans v. Poskon*, 603 F.3d 362, 363 (7th Cir. 2010) (a claim which accrues must be filed without regard to a conviction's validity).**

The shakedown of Plaintiff's cell and subsequent disciplinary ticket issued by Defendants occurred on October 25, 2008. While Plaintiff maintains that he did not know that his constitutional rights had been violated until he was transferred to Lawrence Correctional Center in 2010, Plaintiff stated in his December 19, 2008 grievance that the officers wrote him a disciplinary ticket in retaliation for his filing lawsuits. He also stated in that same grievance that on October 25, 2008 he told the Defendants that they were harassing him and that their actions violated his constitutional rights (Doc. 27 Ex. F). Thus, Plaintiff was aware that his constitutional rights had been violated on October 25, 2008 when the events occurred, or at the very latest on December 19, 2008 when he wrote the grievance indicating that he was being retaliated against and that the officers had violated his constitutional rights. Consequently, the statute of limitations began to run, at the very latest, on December 19, 2008 when he wrote the grievance regarding Defendants' retaliatory acts. However, the statute of "limitations period is tolled while a prisoner completes the administrative grievance process." *Walker v. Sheahan*, 526 F.3d 973, 978 (7th Cir. 2008) (citing *Johnson v. Rivera*, 272 F.3d 519, 522 (7th Cir. 2001)); *Gomez v. Randle*, 680 F.3d 859 (7th Cir. 2012). The statute of limitations period, accordingly, was tolled during the time period that Plaintiff was seeking to

grieve his complaint. Even with the most liberal viewing of the facts, the statute of limitations period was tolled from December 19, 2008 to July 6, 2009, when the ARB issued their ruling.[2] Thus, the statute of limitations began running on July 6, 2009 and expired on July 6, 2011. Plaintiff did not file his Complaint until October 11, 2011, three months after the statute of limitations period expired. Therefore, even assuming that Plaintiff properly exhausted his administrative remedies due to being thwarted in his attempts to exhaust by Latoya Owens, Plaintiff's claim against Defendants is barred by the statute of limitations. Accordingly, the Court **FINDS** that Plaintiff's retaliation claim is **BARRED** by the applicable statute of limitations.

### IV. Conclusion

Accordingly, the Court **GRANTS** Defendants' motion for summary judgment (Docs. 26 & 27) as Plaintiff's claim is barred by the statute of limitations, and **DISMISSES with prejudice** Plaintiff's retaliation claim against Defendants Harmon and Douglas Coffey. Plaintiff's dueling summary judgment motion (Doc. 38) is **DENIED**.

As there are no further claims in the case, judgment can now be entered.

**IT IS SO ORDERED**.
DATED: September 19, 2013.

/s/ *Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge

---

[2] If the Court found that Plaintiff's attempts had been thwarted by Owens when she misplaced or destroyed his grievance submitted on December 20, 2008, the statute of limitations would be deemed to start much earlier. Also, the Court could have construed the statute of limitations period as starting on October 25, 2008 when Plaintiff was issued the disciplinary ticket as he states in his grievance that he told them at that time that they were retaliating against him. Both dates would result in a much earlier expiration of the statute of limitations. The Court has provided Plaintiff with the most generous starting date for the statute of limitations period based on a liberal viewing of the facts in Plaintiff's favor.